NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

SHANON MOHR, *Petitioner/Appellee*,

*v.*

TODD MOHR, *Respondent/Appellant*.

No. 1 CA-CV 25-0601 FC

FILED 05-26-2026

Appeal from the Superior Court in Maricopa County
No.  FN2022-004254
The Honorable Harla M. Davison, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Spencer Fane LLP, Phoenix
By Norma C. Izzo and Alexandra H. LeClair
*Counsel for Petitioner/Appellee*

Reardon House Colton PLC, Scottsdale
By Kristi A. Reardon, Taylor S. House, and Sally M. Colton
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Veronika Fabian delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Chief Judge Randall M. Howe joined.

---

**F A B I A N**, Judge:

¶1        Todd Mohr ("Husband") challenges portions of a dissolution decree ordering him to pay Shanon Mohr ("Wife") for marital waste and equity in the marital home. This Court affirms.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        The parties were married in 1993 and have four adult children together. During the marriage, Husband was employed as a deputy sheriff. In December 2020, the parties separated and unsuccessfully attempted to file separation paperwork through an online service. Then, in September 2022, Wife filed a petition for dissolution of marriage, seeking equitable division of community property, a greater share of community assets based on marital waste, and spousal maintenance under A.R.S. § 25-319. Husband contested Wife's claims for marital waste and spousal maintenance.

¶3        At trial in January 2025, the parties stipulated that the community terminated as of December 24, 2020 ("the community termination date"). After trial, the superior court entered a decree of dissolution ("the Decree"). This Court views the evidence in the light most favorable to sustaining the superior court's findings. *See Mitchell v. Mitchell*, 152 Ariz. 317, 323 (1987).

### Marital Waste

¶4        In 2005, Husband was suspended from his employment due to allegations that he stopped a female motorist and then accompanied her to a hotel. During his suspension, Husband worked other jobs. Nevertheless, the parties struggled financially and eventually lost their home in a short sale. In 2009, Husband was reinstated because the motorist stopped cooperating in Husband's ongoing disciplinary proceedings after she received a settlement. Husband's suspension was reduced to ten days and Husband was informed he could recover $204,378.80 in backpay by filing a declaration of outside earnings form.

**¶5** Nearly two years later, in January 2011, Husband's employer sent Husband a final written request stating:

> Pursuant to the Stipulated Agreement dated March 30, 2009, we have made several requests for you to complete and forward the Declaration of Earnings form. To this date, you have not complied or have elected not to proceed with submission of the Declaration of Earnings paperwork. Therefore, this is a final letter of our intent to request this form. Please be advised, in order for us to proceed with the repayment process and to receive credit for thirty-one (31) months of retirement, it is mandatory for us to receive the Declaration of Earnings. If we do not hear from you within two (2) weeks from the date of this letter, it will be filed and the settlement will be closed.

Even after this letter, Husband did not file a declaration of outside earnings. Thus, Husband never recovered any backpay, which also affected his retirement service credits. Husband subsequently retained an attorney but was unsuccessful in his untimely attempt to get backpay.

### Equity in Marital Home

**¶6** As of December 2020, the stipulated community termination date, the parties' equity in the marital home was $210,000. When the parties separated, Wife moved out of the marital home. Husband subsequently proposed the parties convey the home to their son ("Son") and asked Wife to leave her equity of $105,000 in the marital home until Son could get it refinanced. In exchange, he promised to pay her the equity from another source.

**¶7** In November 2021, Wife signed a warranty deed adding Son to the deed for the marital home. Then, in December 2021, the parties signed a warranty deed transferring the deed into Son's name alone. Wife did not realize that she was transferring her entire ownership interest in the marital home to Son and did not intend to gift it to him. Instead, she thought she was signing additional paperwork to add him to the deed.

### The Decree

**¶8** In March 2025, the court entered the Decree, awarding Wife $102,189 due to marital waste, $1,400 in monthly spousal support, and $105,000 for equity in the parties' new marital home, acquired after the

short sale. The court's finding of marital waste was based on Husband's suspension and subsequent failure to timely seek his backpay.

**¶9**            Husband moved to alter or amend the Decree under Arizona Rule of Family Law Procedure 83. The superior court denied that motion and Husband timely appealed. This Court has jurisdiction pursuant to Article VI, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and 2101(A)(1).

## DISCUSSION

### I.      The Evidence Supports the Finding of Marital Waste.

**¶10**            Husband first argues the court's finding of marital waste for "non-receipt of hypothetical income" is not covered under A.R.S. § 25-318(C). This Court reviews questions of law *de novo. In re Marriage of Pownall*, 197 Ariz. 577, 580 ¶ 7 (App. 2000).[1]

**¶11**            A.R.S. § 25-318(C) permits a court to consider "excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common." Here, the superior court found Husband committed marital waste through his suspension and subsequent unreasonable forfeiture of backpay, which falls within the statute. *See Goodell v. Goodell*, 257 Ariz. 563, 571-72 ¶¶ 35-38 (App. 2024) (unreasonably forfeiting employment benefits can constitute destruction of community property and thus marital waste).

**¶12**            Husband next argues that substantial evidence does not support the superior court's finding of marital waste. This Court views the evidence in the light most favorable to sustaining the superior court's findings. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346 ¶ 5 (App. 1998).

**¶13**            As the spouse alleging waste, Wife had the initial burden to make a *prima facie* showing that Husband's actions were excessive, abnormal, or constituted destruction of community property. *See id.* at 346-47 ¶¶ 6-7. Once Wife made a *prima facie* showing of waste, it was Husband's burden "to go forward with evidence to rebut the showing of waste because all of the evidence relative to the expenditures is generally within the knowledge, possession, and control of the spending spouse." *Id.* at ¶ 7.

---

[1] Although Wife contends that several of Husband's arguments on appeal are waived, this Court exercises its discretion to address the merits. *See Meek v. Meek*, 256 Ariz. 405, 409 ¶ 15 (App. 2023).

¶14 Here, Wife made a *prima facie* showing that Husband committed waste. Husband was suspended from employment based on his own misconduct and forfeited $204,378 in backpay after he was reinstated, resulting in the loss of the parties' home and some retirement service credits.

¶15 Husband argues Wife failed to show waste because he would not have received the entire $204,378 if he had applied for backpay. Instead, he claims that his backpay would have been offset with his earnings from other jobs he worked during his suspension. He also claims that if he had received the backpay, he would have had to amend the family's tax returns, which would have resulted in a significant cost to the community. Husband is asking this Court to reweigh the evidence and credibility of witnesses, which this Court will not do. *Id.* at 347 ¶ 13.

¶16 Although Husband testified he would have received backpay of only $30,000 to $35,000, he presented no corroborating evidence that such an offset would have occurred or that he received any income from other employment during his suspension. He also testified he had to withdraw $90,000 from his retirement account during his suspension because he had gone to a "very low income." Even with that withdrawal, the parties lost their home to a short sale.

¶17 Husband also argues no waste occurred because any waste was unintentional as he attempted to recoup his lost wages by obtaining counsel. The plain language of A.R.S. § 25-318(C), however, does not require a showing of intentionality. And although the record shows Husband obtained counsel, it was "too little, too late" because he had already failed to file paperwork for almost two years despite repeated reminders.

¶18 The superior court did not err in finding Husband committed marital waste, awarding half of that marital waste to Wife, or by using it as a basis for an upward deviation in spousal maintenance. *See* A.R.S. §§ 25-319(B)(11), 25-319 app. § III.C.4.

## II. The Superior Court Did Not Err by Awarding $105,000 to Wife for Her Equity in the Marital Home.

¶19 Husband argues the superior court erred in its award of $105,000 for Wife's equity in the marital home because it made no explicit findings that the parties' transfer of the marital home to Son was fraudulent, even though Wife requested findings of fact and conclusions of law under Arizona Rule of Family Law Procedure 82. This Court interprets the Rules

of Family Law Procedure *de novo*, *Sobrino v. Fisk*, 259 Ariz. 25, 25 ¶ 6 (App. 2024), and will not disturb the apportionment of community property absent an abuse of discretion. *Gutierrez*, 193 Ariz. at 346 ¶ 5.

**¶20**     Rule 82 provides:

> If requested before trial, the court must make separate findings of fact and conclusions of law. The findings and conclusions may be stated orally on the record after the close of the evidence or may appear in an opinion, minute entry, or memorandum of decision filed by the court.

**¶21**     The Rule, however, does not require findings of fact and conclusions of law regarding claims that did not form the basis for its decision. *See Elliott v. Elliott*, 165 Ariz. 128, 132 (App. 1990) (under analogous Rule 52, a court need only make findings on the ultimate facts necessary to resolve the disputed issues). Although Wife claimed the transfer to Son was a fraudulent conveyance, the superior court's award of $105,000 was not based on fraud, and instead based on Wife's equity in the marital home at the community termination date:

> At time of trial, the parties agreed that, for purposes of an equitable division of property under A.R.S. § 25-318, the appropriate division date for property is December 24, 2020 (community termination date). The testimony was that prior to the [stipulated] termination date, the parties owned . . . the marital home. Further testimony indicated that following their separation, the parties conveyed the marital home to Adult Son. . . . Husband testified that Wife subsequently gifted her interest, but the Court is not persuaded by Husband's testimony, particularly in light of Adult Daughter, Adult Son, and Wife's Mother's testimony that Wife's community interest was never intended as a gift.

**¶22**     Because the superior court's award was not based on fraud, it did not need to set forth findings of fact and conclusions of law regarding whether the conveyance was fraudulent. *See id.*

**¶23**     Further, the superior court's decision is consistent with Husband's oral agreement to pay Wife $105,000 for her equity interest in the home. After the parties separated, Husband asked Wife to leave her equity in the marital home so that Son could refinance it. He promised to pay her $105,000 from other sources, but never did. Thus, the superior court's award of $105,000 to Wife was not an abuse of discretion.

### III. Son Was Not an Indispensable Party.

**¶24** Finally, Husband argues that Son should have been joined as an indispensable party under A.R.S. § 25-314(D) because Wife asked the superior court to "order Husband to pay Wife her equity of $105,000 . . . [or] order the sale of the marital home to ensure all parties, including [Son], receive their equity." A party is indispensable when their "interest in the controversy is such that no final judgment or decree could be entered, doing justice between the parties actually before the court and without injuriously affecting the rights of others not brought into the action." *Town of Gila Bend v. Walled Lake Door Co.*, 107 Ariz. 545, 549 (1971).

**¶25** That is not the case here. The superior court entered a final decree ordering Husband to pay Wife $105,000 for her equity in the marital home. The order had no effect on Son or the home. Thus, Son was not an indispensable party. *See Gerow v. Covill*, 192 Ariz. 9, 15 ¶ 22 (App. 1998) ("If . . . it is possible to fashion relief which does not adversely affect the transferee's interest, the transferee need not be joined . . . .").

### IV. Attorney Fees.

**¶26** Both parties request attorney fees and costs pursuant to A.R.S. § 25-324 and Arizona Rules of Civil Appellate Procedure 21. In its discretion, this Court denies both parties' requests for attorney fees. Because Wife is the successful party on appeal, this Court awards her taxable costs contingent upon her compliance with Rule 21. *See* A.R.S. § 12-341.

### CONCLUSION

**¶27** The Decree is affirmed.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED:**        JR