NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

OVIDIO WILMER HERNANDEZ, *Petitioner/Appellant*,

*v.*

MARIA TANYA CAROLINA SALAZAR FABIAN, *Respondent/Appellee*.

No. 1 CA-CV 18-0377 FC
FILED 7-23-2019

Appeal from the Superior Court in Maricopa County
No. FC2015-091409
The Honorable Justin Beresky, Judge

**AFFIRMED**

COUNSEL

Ovidio Wilmer Hernandez, Chandler
*Petitioner/Appellant*

Alongi Law Firm PLLC, Phoenix
By Thomas P. Alongi
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Diane M. Johnsen joined.

---

**C A T T A N I**, Judge:

¶1 Ovidio Wilmer Hernandez ("Father") appeals from the decree of dissolution ending his marriage to Maria Tanya Carolina Salazar Fabian ("Mother"). For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Father and Mother were married for more than 17 years and have two minor children together. In March 2015, both parties separately petitioned for dissolution of their marriage. The cases were consolidated and went to trial after over two years of contentious litigation.

¶3 In September 2017, the court held trial on legal decision-making authority and parenting time. The court issued an order (the "Parenting Order") awarding joint legal decision-making authority, designating Mother the primary residential parent, and giving Father parenting time every Tuesday afternoon through Wednesday morning and every other weekend. In January 2018, the superior court held a second day of trial to address financial issues. The court then entered a decree expressly incorporating the Parenting Order and, as relevant here, awarding Mother spousal maintenance of $2,000 per month for three years and attorney's fees and costs of $50,000.

¶4 After entry of the decree, Father moved for reconsideration and new trial. The superior court denied his motion, and Father appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(1), (5).

## DISCUSSION

¶5 Father challenges three aspects of the decree: parenting time, spousal maintenance, and attorney's fees.

## I.     Parenting Time.

¶6          Father argues the superior court erred by failing to award equal parenting time.  We review the court's ruling for an abuse of discretion.  *See In re Marriage of Diezsi*, 201 Ariz. 524, 525, ¶ 3 (App. 2002). We will affirm if competent evidence in the record supports the court's decision.  *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999).

¶7          Under A.R.S. § 25-403.02(B), the superior court must adopt a parenting plan that is consistent with the children's best interests and maximizes the parents' respective parenting time.  The court must consider the 11 factors enumerated in § 25-403(A) in deciding what parenting plan is in the best interests of the children and, under § 25-403(B), must make findings on the record regarding "all relevant factors and the reasons for which the decision is in the best interests of the child."  A.R.S. § 25-403(A), (B); *see also Downs v. Scheffler*, 206 Ariz. 496, 499, ¶¶ 7–8 (App. 2003).

¶8          Father argues the superior court abused its discretion by failing "to provide a factual basis for restricting Father's parenting time." He relies on this court's holding in *Nold v. Nold*, 232 Ariz. 270 (App. 2013), which vacated a custody order because it lacked "any discussion of the statutory factors."  *Id*. at 273, ¶ 12.  Unlike the circumstances in *Nold*, however, the Parenting Order here specifically addressed each of the § 25-403 factors.

¶9          The superior court's best-interests findings are supported by the record.  Father testified that equal parenting time was in the children's best interests.  But Mother testified that she should be the primary residential parent, in part, because Father had not followed medical professionals' recommendations for the children.  Dr. Daniel Christiano, the court-appointed evaluator, prepared a report recommending equal parenting time (the "Report").  Mother's expert, Dr. Philip Stahl, reviewed and critiqued the Report.  He described the Report's findings as "extremely superficial" and criticized Dr. Christiano's failure to assess the allegations of verbal, emotional, and physical abuse by Father.  Dr. Stahl also expressed concern that Dr. Christiano had not followed up with the children about why they had said they were afraid of making Father angry.  Dr. Martha Grout, the family's physician, testified that the parties' son felt he had to protect his younger sister from Father's anger.  And  the "safe haven" counselor assigned to meet with the children provided a letter to the court expressing concern regarding Father's interactions with the children. Together, this evidence suggests the children are more comfortable interacting with and relating to Mother and are better adjusted to her home.

¶10        Recognizing that the superior court is in a better position to gauge witness credibility, our role on appeal is not to reweigh conflicting evidence. *See Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009). Here, the superior court observed the demeanor of Father, Mother, Dr. Christiano, Dr. Stahl, and Dr. Grout as they testified regarding the children's best interests, and that evidence, although conflicting, provided ample basis for the court's conclusion.

¶11        Citing *Barron v. Barron*, No. 1 CA-CV 17-0413 FC, 2018 WL 3722815 (Ariz. App. Jul. 31, 2018), *vacated in part on other grounds*, 246 Ariz. 449, 452, ¶ 21 (2019), Father argues that the Parenting Order unduly restricted his parenting time without adequate basis. In *Barron*, this court reversed a parenting time order granting the father only one overnight a week plus alternating weekends. *Id.* at *1, 5, ¶¶ 5, 23. But in that case the mother testified that she had no complaints about the father's parenting of their children, so there was no dispute that "each parent [could] provide a safe, loving and appropriate home for the children." *Id.* at *3, ¶ 11. Here, in contrast, the evidence outlined above supports the court's conclusion that the children's best interests were served by unequal parenting time.

¶12        Moreover, in *Barron* the superior court "legally erred by applying a presumption *against* equal parenting time." *Id.* at *2, ¶ 10 (emphasis added). Here, the Parenting Order acknowledged the legislature's goal of providing children "substantial, frequent, meaningful and continuing parenting time with both parents," *see* A.R.S. § 25-103(B)(1), and although the superior court did not award Father equal parenting time, it did provide him with substantial and frequent parenting time.

¶13        Accordingly, although the superior court did not explain its reasons for the Parenting Order, record evidence supports the court's decision, and we therefore affirm.

## II.    Spousal Maintenance.

¶14        Father also challenges the superior court's award of spousal maintenance to Mother. Specifically, he argues the court abused its discretion by failing to address the factors in A.R.S. § 25-319. We review the award for an abuse of discretion and will affirm if there is reasonable supporting evidence. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 14 (App. 1998). In doing so, we acknowledge that the superior court "is in the best position to properly tailor an award of spousal maintenance." *In re Marriage of Hinkston*, 133 Ariz. 592, 593 (App. 1982).

¶15          As relevant here, the superior court is authorized to award spousal maintenance if one spouse "[l]acks sufficient property, including property apportioned to the spouse, to provide for that spouse's reasonable needs."  A.R.S. § 25-319(A)(1); *see also Elliott v. Elliott*, 165 Ariz. 128, 136 (App. 1990) (explaining that the superior court may award spousal maintenance if any one of the § 25-319(A) factors is present).  After determining a spouse is eligible under § 25-319(A), the court must then consider the factors set forth in § 25-319(B) to determine the amount and duration of the award.

¶16          Father argues that the superior court awarded spousal maintenance "without detailing the facts to support the decision."  But even though § 25-319 does not require written findings, the court made such findings here.  *See Elliott*, 165 Ariz. at 135 n.1 (noting that § 25-319 only requires the court to consider the factors, not make specific findings).  And because Father did not request findings of fact under Arizona Rule of Family Law Procedure 82, we may infer any additional findings necessary to sustain the superior court's judgment.  *Id.* at 135.

¶17          First, the superior court determined that Mother was eligible for spousal maintenance because she lacks sufficient property, including property apportioned to her by the decree, to provide for her reasonable needs. *See* A.R.S. § 25-319(A)(1).  Then, the court's ruling addressed each of the 13 factors in § 25-319(B), making findings regarding 11 factors and concluding that no evidence was presented regarding the remaining two factors.  As the findings reflect, the record contains substantial evidence to support Mother's spousal maintenance award.

¶18          Father works as a business consultant earning approximately $125,000 per year.  Mother is unemployed with no income.  The decree awarded the parties equitable shares of the community property and debt.  During the marriage, Mother stayed home to care for the children.  She testified that although she holds a bachelor's degree in computer science, her skills are outdated.  At the time of trial, Mother was enrolled in a community college class as a precursor to applying for admission in a master's degree program. Thus, the three-year spousal maintenance award will permit Mother time to update her skills and enter the work force.  *See Van Dyke v. Steinle*, 183 Ariz. 268, 275 (App. 1995) (recognizing that one of the purposes of spousal maintenance is to allow training or education to enable the spouse to become financially independent).

¶19          Father claims the superior court failed to address resources Mother received after the dissolution proceedings commenced but before

the court issued its decree.  He argues that Mother "took over $115,000.00 of the liquid assets in the marital community at the onset of the litigation." The court did, however, address these assets by deducting a commensurate amount from Mother's share of the community property.  Father also points out that Mother received interim maintenance of $900 per month in addition to having her household expenses paid.  Father does not provide evidence, however, of how this past interim support would allow Mother to support herself as she re-trains to enter the work force.

¶20            Because substantial evidence in the record supports the spousal maintenance award, we affirm.

III.    **Attorney's Fees.**

¶21            Finally, Father challenges the superior court's $50,000 award of attorney's fees and costs to Mother.  We review the award for an abuse of discretion. *See In re Marriage of Williams*, 219 Ariz. 546, 548, ¶ 8 (App. 2008).

¶22            The superior court awarded Mother attorneys' fees under A.R.S. § 25-324(A), which authorizes the court to make a fee award after considering the parties' financial resources and the reasonableness of their positions.  Here, the court based its award on the "substantial disparity of financial resources between the parties."  Even though the decree awarded the parties equitable shares of the community property and debt, the court's finding is supported by the record, which reflects that Father makes approximately $125,000 per year while Mother has no income.

¶23            Finding no abuse of discretion, we affirm the attorney's fee award.

## CONCLUSION

¶24 For the foregoing reasons, we affirm the decree. Mother requests attorney's fees and costs on appeal under A.R.S. § 25-324. Having considered the relevant factors and because Father's income is significantly higher, we award Mother her reasonable fees and costs on appeal upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA